JANUARY TERM, 1882, No. 231. DECEMBER 5, 1882.

## Overseers of the Poor of the City of Parker *v.* Shaffer.

1. One who has maintained a pauper under a contract with the overseers of the poor may recover against them for her maintenance after notice from them of discharge, if at the time of such notice she was not in a condition to be removed, and he then notified them to take her away, and that he would not keep her without being paid.

2. If the pauper was the subject of relief, the city was liable, and even if they had the right to rescind the contract, it did not relieve them from that liability.

3. It is the duty of the overseers to provide work for a pauper capable of it, as well as maintenance, and if they believed that she was able to earn her own living, it was their duty to contract with some person for her employment.

4. The overseers cannot by their own act discharge a pauper.

5. *Semble* that the overseers could not have discharged themselves from the necessity of providing for the pauper by going to the justice by whom she had been committed to their keeping, and giving evidence that she was able to support herself.

Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Armstrong County.*

Appeal of R. R. Wilkins and S. H. Bailey, overseers of the poor of Parker City, from a judgment of a justice of the peace in favor of John Shaffer for $65, alleged to be due the said Shaffer for the board of a pauper.

The facts as they appeared at the trial before NEALE, P. J., were as follows: On August 4, 1879, R. R. Wilkins and S. H. Bailey, overseers of the poor of Parker City, entered into a contract with John Shaffer, a farmer, by which he undertook to board and keep a Swedish woman named Christina Erickson, who had been duly declared a pauper by two justices of the peace of the said city. Shaffer was to receive $2 50 a week for her board; $1 50 in cash, and one dollar to be credited by the overseers on a note for $100 which they held against him. On the same day he took Mrs. Erickson to his farm.

*S. H. Bailey* testified that in the latter part of 1879

Mrs. Erickson came to his house and told him that "she was able to earn her own living, and for us not to pay her board any more."

*R. R. Wilkins* testified, *inter alia:*

"In December, 1879, Mr. Shaffer came in to see me, and I notified him that we would discharge her on the 1st day of January, 1880. . . . I seen him afterwards. It was a short time after the 1st of January. . . . I told him that we had discharged her on the 1st of January, and would not pay him for keeping her after that time."

*Shaffer's* evidence on this point was as follows:

" *Q.* Didn't the overseers of Parker City give you notice * * before January, 1880, * * that they would discharge her on the 1st of January, and for you not to keep her any longer?

*A.* They told me they would not pay me any more for keeping her.

*Q.* Didn't they tell you to discharge her?

*A.* No; they didn't say. They told me they thought she was able to earn her own living, and they would not pay me any longer. . . . They always said they would not pay me any more. I said I would not keep her longer for nothing. I said I could not keep her for nothing."

After the 1st of January, 1880, Mrs. Erickson still continued to live with Shaffer, the overseers not taking her away or making any effort to get her work. Other evidence showed that she had been crippled by an accident, but was able at times to help Shaffer in domestic duties, and that she was the only other member of his household.

*Mrs. Stahl*, a neighbor, testified that she frequently complained of pains in her hand and hip.

"*Q.* If you wanted a woman to work for you about your house at such work as she would be able to do, would she be worth her keeping?

*A.* No, sir."

In February of 1880 the overseers sent the regular physician for the poor to visit her, to ascertain her condition.

In December, 1880, Shaffer recovered judgment before a justice of the peace against the overseers for $65, the amount claimed to be due for board from November, 1879, up to the date of suit.

The plaintiff submitted, *inter alia*, the following points:

"2. That the notice alleged to have been given to plaintig on or about the 1st of January, 1880, did not rescind the contract, if the jury believe that the plaintiff at the same time gave notice to the overseers to come and take

her away, and that he would not keep her without being paid, and if they believe the pauper was not in condition then to be removed."

*Answer.*    Affirmed.    (Third assignment of error.)

"3. That it was the duty of the overseers to provide for the said pauper necessary means of subsistence, and if the plaintiff kept her after giving notice that he would not keep her without being paid, the said overseers are liable to him for maintenance, even if the original contract was rescinded."

*Answer.*    That is affirmed as qualified in the general charge.    (Fourth assignment of error.)

"4. That it was the duty of the overseers to provide work for the said pauper as well as maintenance, and if they believed she was able to earn her own living, it was their duty to contract with some person for the employment of the pauper, and to place her with such person for employment."

*Answer.*    That is affirmed as qualified in the general charge.    (Fifth assignment of error.)

The Court charged *inter alia* as follows :

"The Act of Assembly does not, in this kind of cases, appear to provide any special method for discharging a pauper from the care or custody of the overseers, but it is a general rule that the power that confers a duty can discharge that duty ; so it would seem reasonable that [if the overseers of the poor had gone to the justice who had committed her to their custody or keeping, and had made a statement on the evidence they received that the woman was in good health and was able to support herself, we think that would have discharged her from their custody. I do not know that that method is usually pursued, but it would seem to me that would be the only way to obtain a legal discharge,] because when they are charged with a duty by a particular authority, they cannot themselves discharge that duty, they cannot of their own act do so. They might say as soon as a person has been committed to them by the act of a justice of the peace, 'why, we discharge her ; we won't take care of her.'    There would not be any validity in that.    If she were still a pauper and requiring their attention, she could go at once and prosecute them for misdemeanor in office, if they failed to take her.    She could lay her complaint with the justice of the peace for such proceeding, and they would then have to show that she was well and competent to make her own living, and was not a charge upon them, which it would be difficult to maintain, if it were done immediately

[Overseers of the Poor of the City of Parker *v.* Shaffer.]

after she was made a charge; because here the justice of the peace has declared that she should be taken care of by the overseers of the poor. [They cannot, by their own act, we think, sufficiently discharge any one] from their custody, [because they can only do so when there is no liability for support; but so long as any liability for support exists, they are bound to furnish that support;] but it is another question in this case.

[The contract was entered into, and they went and told him that they would not carry out the contract any longer than the first of January. If he accepted their proposition, they could have rescinded that contract,] and he might have said to them, (and this is for you,) to take the pauper away. [The pauper was there on his hands and they should have seen that the pauper was taken away from him, or else they should have had an understanding upon what terms he would continue to keep her.] If he would agree to keep her for nothing, that would be the end of it. The pauper was there, declared to be a pauper and [they ought to have done something, or seen that something was done with her.] If they did not find work for her, and notified him not to provide for her, was she to be cast upon the streets if he turned her out of doors? You are to consider whether he could have turned her out of doors at such time, taking into consideration all the evidence that you have bearing upon the fact of her condition, her disabilities of various kinds that have been shown and proved before you, whether he could, as a man having any feelings of humanity in him, have turned her out of doors. If she was able to go, the proper course to have pursued would have been to have done so.

We have something somewhat analagous to this. I mean where a landlord gives notice on the first day of January to the tenant that he cannot remain in his house any longer than the first day of April. There is a duty devolving upon the landlord and upon the tenant. The tenant, in pursuance of the notice to go out, ought to leave the premises; if he don't do so, and the landlord would obtain possession, he must go and see that he does leave the premises; but if he remains and the landlord does not do anything to get possession of the premises, why, he is charged only with the rent of the premises that he is occupying, and the landlord, assenting to it, is held in law to be continuing the lease to the tenant for another year, so if he accepts the lease he allows the tenant to remain there. So here the defendants allow this person

to remain on the premises of Mr. Shaffer. They allowed him to continue keeping her, and it becomes now a question of whether there was a continuation of their duty in the first place to take charge of her, it will be for you to determine under all the evidence; and if so they are bound and should pay Mr. Shaffer.

If the evidence satisfies you that the woman's work and labor were worth any wages, why, they are entitled to the benefit of it. The overseers of the poor are entitled to the benefit of her wages, and if they exceed the value of what her keeping would be, the overseers would not be liable on this suit, but if they are not, then it becomes a question for you.

If the overseers failed to take her away, and it was their duty to do so, they then would be liable for the time they allowed this woman to remain in the care and under the charge of Mr. Shaffer. They seem to have recognized the fact that she was there from the evidence that you have in reference to the visit made by Doctor Goheen, who went there to see her under the direction of the overseers of Parker City. They seem to have had knowledge that she was remaining there. If they were desirous of having this matter entirely disposed of, they should have seen to it at the time, and had her removed, if they desired to change the place where she would be, and provided her a place where she could earn her own living, and released them in that way. But if she was working and doing labor at the house of Mr. Shaffer, and it was of the value of her keeping, after the first of January, why, the plaintiff could not recover, if she was earning her own keeping and making wages; but if she was a care and a charge upon Mr. Shaffer, and you find it was the duty of the overseers to have provided for her under the evidence in the case and what instruction we have given you bearing upon the subject, then it will be for you to say how much he is entitled to after the first day of January, 1880, because the whole question is settled up to the first of January, 1880."

December 23, 1881. Verdict for plaintiff for $182 75, and subsequently judgment thereon.

The defendant thereupon took a writ of error assigning for error the affirmance of the plaintiff's points as above, and the portions of the charge within brackets.

*John Smullin* and *Gilpin & McCain* for plaintiffs in error.

[Overseers of the Poor of the City of Parker *v.* Shaffer.]

It is the universal practice of overseers of their own motion to discharge paupers.

The right of Shaffer to recover anything from the overseers for the keeping of this pauper arose only from express contract. The terms of the contract are not disputed. He was to keep the pauper at $2 50 per week. He was not bound to keep her any particular number of weeks. He could have, at the end of any week, refused to keep her longer, and the overseers, at the end of any week, could have refused to pay him for any longer time, and that is what they did do when they determined that she no longer required maintenance from them. They gave him notice that they would discharge her on January 1, 1880, and when that time came they did discharge her, and from that time were no longer liable to Shaffer for what he might furnish her. The necessities of the pauper would not have continued the contract, so far as Shaffer is concerned. If they were in error in supposing that her physical condition was better than it was, and acted accordingly, she alone, and not Shaffer, could have taken advantage of their error, and forced them by indictment or a new order to continue to furnish her maintenance.

We think that it was manifest error for the Court to charge that the overseers cannot refuse to maintain a pauper until the order of relief shall have been rescinded or revoked by the justices by whom it had been issued.

*James P. Colter* for defendant in error.

The overseers must pay for attention given for a needy person in extremities, even though at the time no order for relief had been made.

Directors *v.* Worthington, 2 Wright, 162.

The necessities of the pauper imposed upon the district the legal duty to extend relief, and it is bound to pay a reasonable compensation to any one whom it has knowingly permitted to be at the trouble and expense of keeping her.

DECEMBER 30, 1882.—PER CURIAM: This case was submitted to the jury with proper instructions. None of the assignments are sustained. If the pauper was the subject of relief, the city was liable, and even if they had a right to rescind the contract made with Shaffer, it did not relieve them from that liability. We do not assent to all that was said in the charge, especially that the overseers could have discharged themselves by going to

the justice who had committed the pauper to their custody, but that did the plaintiffs in error no injury.

Judgment affirmed.